### GRAFTON BANK *versus* JOSHUA WOODWARD.

H. applied to the cashier of a bank for day of payment of a note he had given to the bank, and his proposition having been submitted to the directors of the bank, who were present, in writing, the cashier informed H. that his proposal was accepted, and delay was given. It was held, that the declarations of the cashier to H. were not evidence of what the terms of the contract were.

When improper testimony is admitted on one side, it is no ground for a new trial that to meet such testimony, improper evidence was admitted on the other side.

Where a plaintiff obtained leave to withdraw a demurrer, and take issue upon the matter of a plea, and the issue was found in favor of the plaintiff, it was held that he was entitled to the costs of the suit from the commencement up to the term when the demurrer was joined, inclusive ; and to all the costs after the term when the demurrer was withdrawn ; and that the defendant was entitled to the costs of all the terms, after the term when the demurrer was joined, up to the term, when it was withdrawn, inclusive.

ASSUMPSIT upon a note for $800, dated July 23, 1823, and payable to the bank, on demand, with interest after sixty days. The cause was tried here upon the general issue, at May term 1830, and a verdict returned for the plaintiffs. The defendant moved for a new trial on the following case.

The note was made by Aaron Hale, Thomas Kent, Joel Phelps, Jonathan Pool, and Joshua Woodward, and

contained their joint and several promises without any designation of principal and surety ; but Aaron Hale was in fact the principal, and the other makers only sureties, and this was known to the directors of the bank when the note was discounted.

To prove that the plaintiffs, on the 28th January, 1824, for a valuable consideration, agreed with the principal, without the assent of any of the sureties, to give to the principal day of payment of the amount then due on the note for the term of sixty days, and thus discharged the sureties, the defendant called the said Hale as a witness, who testified, that on the 28th January, 1824, he went to the bank for the purpose of paying, in part, this and other notes, and making some arrangement as to the balance ; that he named to the cashier the sum of money he had to pay, and requested some indulgence as to the the balance ; that, by the advice of the cashier, his proposals were put in writing and delivered to the directors of the bank by the cashier ; that after some time the cashier informed him that the directors had agreed to give him the indulgence he desired, which was, to have day of payment for the term of sixty days, and that for such indulgence he actually paid to the cashier interest upon the said note at the rate of twelve per cent. per annum from the 19th November, 1823, to the said 28th January, 1824, and interest for sixty days in advance from that time.

This witness stated that he had no conversation with the directors, and that the contract was effected through the cashier.

The cashier was called by the bank, and denied that he had any recollection of any such contract as stated by Hale.

The plaintiffs offered in evidence certain rules of the bank for the purpose of shewing the improbability that the directors would have entered into such a contract as Hale had stated ; to this the defendant objected, on the

ground that he had no knowledge of the rules, but the evidence was admitted.

No objection was made by the plaintiffs to the testimony of Hale with respect to what the cashier told him relating to the determination of the directors upon Hale's proposals : but the court instructed the jury that this was not legal evidence, and ought not to be regarded.

*J. Parker*, for the defendant, said that the fact that Wright was in court and testified that he had no recollection of making the contract to which Hale testified, might be laid out of the case. Wright's want of recollection did not prove that such contract was not made, and if there was conflicting testimony, it was for the jury to weigh and to say whether they would give credit to the positive testimony of Hale, or to the want of recollection on the part of Wright, in deciding whether a contract was, or was not, made. Neither did it vary the case, that Wright might have been introduced as a witness by the defendant. If any of the testimony of Hale was inadmissible, it would not have been made admissible by the fact that Wright's testimony could not have been procured ; and on the other hand, if admissible in any event, that admissibility was in no way to be governed by any question whether the defendant might, or might not, have availed himself of the testimony of Wright also.

He contended that Wright was the agent of the bank in making the contract to which Hale testified, and that his declarations at the time that contract was made were competent evidence. Payley on Agency, 194--205 ; Phil. Ev. 77, *et seq.* ; 4 Taunt. 519, *Langhorne* v. *Allnut.* The authorities all went to show that the declaration of an agent accompanying a contract, and in relation to that contract, were admissible as part of the *res gestæ*.

That Wright was the agent of the plaintiffs in making this contract, and not the agent of the defendant, he contended was most abundantly in evidence from every part of the case.

He was the cashier of the bank—the general agent through whom the plaintiffs transacted their business with other persons. He held the notes and monies of the plaintiffs, received propositions for discounts and indulgence, took payments, made indorsements, and gave discharges. He was held out to the world by the plaintiffs as the person with whom their business was to be transacted, and the only person. If he laid any proposition before the directors, and took their orders, in executing those orders he acted as the agent of the corporation. He doubtless received a salary from the plaintiffs for doing their business.

He might act under certain general rules, or he might act under the orders of other officers of the bank ; but in either case he acted as the agent of the corporation.

There was no evidence—there was no pretence that in any case he acted for himself, or as the agent of applicants in relation to the business of the corporation.

He was not only the general agent of the corporation, but he was applied to in this case as such agent. Hale did not go to him and request him to negotiate as his agent, or make him any compensation, or in any way consider him as his agent. He applied to him as the agent of the bank. Whether Wright had previous directions to make the contract Hale wished, or whether he went to the directors to get instructions for that particular case, made no difference. If he went to the directors, he went as the agent of the bank to obtain instructions, and not as the agent of the defendant—and when he returned and made the contract, he did it as the agent of the corporation acting under the instructions of other officers of the same corporation.

The proposition of Hale was put in writing at the suggestion of Wright, that there might be no mistake as to what he proposed to do and wished to be done. The contract was closed with Wright, and not with the directors. It never became a contract until he executed it,

Bank
*v.*
Woodward.

and he surely did not execute it with Hale as the agent of Hale. When he closed the contract on Hale's proposal, received the money and made the indorsements, he was as much the agent of the corporation in writing and closing the contract as he was in taking the money, indorsing it on the note, and filing the note again among the other papers of the bank.

Had Wright received directions to renew all notes without payment of the checks during a particular week, he would, in so doing, most unquestionably have acted as the agent of the corporation ; and he was equally so, whether he acted under particular instructions for a week, or in one particular case.

He contended, also, that the rules of the bank ought not to have been admitted in evidence. Notice of those rules was not brought home to the defendant, and if it had been, the rules would not prove that the particular contract shewn by Hale's evidence was not made. It was admitting the anterior declarations of the plaintiffs that they intended to transact their business in a particular manner, as evidence in their favor to show that in a particular instance they must have transacted it in that manner.

*Bell*, for the plaintiffs.

The question is, whether the declarations of Wright ought to have been left to the Jury as evidence in this case. The mere oral assertion, or written entry by an individual, that a particular fact is true, cannot be received as evidence. 1 Starkie's Ev. 46.

The testimony of Hale, in this case, was merely what Wright asserted to have been agreed on by the directors.

The matter to be proved was, the contract between the bank and Hale, to extend the day of payment. When it is proved that A is agent of B, whatever A does, or says, or writes, in the making of a contract as agent of B, is admissible in evidence, because it is part of the contract

which he makes for B, and therefore binds B, but it is not admissible as his account of what passes. 4 Taunt. 519. But Wright had no power to make the contract in this case. He referred Hale to the directors, and at Hale's request, stated Hale's proposals and submitted them to the directors. The bank either assented, or did not assent to the proposal. In either case Wright was not their agent. He did not pretend to have any power to make a contract with Hale, and he made no contract. His declarations were not, therefore, a part of the *res gestæ*; for these are only so, when used by the agent, who has power to make, and who does make, the contract. The declarations of Wright in this case were the mere report of Hale's agent as to the result of the proposals submitted to the directors, and were most clearly not evidence. 1 Espin. N. P. C. 375, *Maesters* v. *Abraham*; 8 Pick. 127, *Baker* v. *Briggs*.

Before the act of A can be given in evidence as the act of B, it must be proved that A was the agent of B. 2 Starkie's Ev. 54. This proof may be, 1st, direct or express; or 2d, it may arise from relative situation, as in the case of a sheriff and his deputies; or 3d, from habit and course of dealing; or 4th, from recognition or acquiescence in the act. The agency of Wright can only arise, if at all, from the third mode.

There was no attempt to show the contract set up in this case made with the agent. It was made with the principal, if at all. The acts and declarations of Wright are not, therefore, to be received as the acts and declarations of an agent in the course of his employment as to what he himself did, but as to what his principal did and authorized to be done. The proposals of Hale were submitted to the decision of the directors. Now how is the decision to be proved? By what can be proved was done and authorized to be done? or by the mere declaration of Wright?

The act in the present case was not one in the usual

course of dealing with the bank, but the reverse, and is so set up. The payment of the note would have been in the usual course of dealing. The agreement to postpone was unusual, and must therefore be proved.

Mere evidence that the agent has done acts in the name of the principal will not bind the latter without some evidence of recognition on his part. 2 Starkie's Ev. 58. An agent cannot bind his principal by any act beyond the scope of the authority delegated to him. 2 Starkie's Ev. 59.

When an agent makes any declaration, or representation, of his own, and not as the instrument of his master, that declaration will not be evidence, but the agent himself must be called to prove any fact within his own knowledge. 2 Starkie's Ev. 60.

Another question is, whether the rules of the bank were admissible in evidence? They were offered, not to give a construction to the contract, but to bear upon the credibility of Hale. They were offered as one of the facts and circumstances existing at the time Hale says the contract was made, and as going to show it probable that he was mistaken. 1 Starkie's Ev. 16.

RICHARDSON, C. J., delivered the opinion of the court.

The first question in this case is, whether the direction to the jury, with regard to the testimony of Hale, was correct?

In order to determine this question, it is necessary to see distinctly what was the matter in dispute between the parties. It was not denied that there was an agreement between the bank and Hale with respect to the note on the 28th January, 1824; but the question was, what was that agreement? On the part of the defendant, it was said that the agreement was absolute and unconditional to wait sixty days at all events. On the other side, the agreement was alleged to be, to let the note lay, as it lay, for the first sixty days after it was made, payable on demand, although the interest had been paid

in advance for that term. Now as to the terms of the contract, and the manner in which the directors agreed to let the note lay, Hale knew nothing beyond what the cashier told him. If then the cashier was Hale's agent, nothing can be clearer than that the declarations of the agent cannot be evidence, in cases where he may be called as a witness. 4 N. H. Rep. 236, *Ross* v. *Knight*.

But if the contract was in fact made between Hale and Wright, the latter acting under the direction and as the agent of the directors in the transaction, then the declarations of Wright may be considered as a part of the *res gestæ*, and as such, are admissible as evidence.

The real question then is, in what relation Wright stood to the parties in the making of this contract. There is no dispute about the facts, and the question is purely a question of law. It is not denied, that Hale applied to the cashier for day of payment of the notes he had given to the bank, that the cashier told him the proposition must be laid before the directors ; and that Hale's proposal was reduced to writing and delivered to the directors by Wright. And the case states, that after some time the cashier informed Hale that *the directors had agreed* to give him the indulgence he desired. This is admitted to have been the manner in which the contract was made.

Now there is no dispute that the cashier was the general agent of the bank. It is not denied, that he acted as such in receiving the money which Hale paid, and in other parts of the business. But did he make the contract with Hale as the agent of the bank ?

This is the question, and it is a question very easily determined. It is perfectly clear upon the case stated, that the cashier had nothing to do with the making of the contract except to be the medium of communication between Hale and the directors. If he was the agent of the bank in all other matters between Hale and the bank, it is certain that he had no agency in the making

of this contract further than to carry Hale's proposal to the directors, and bring back their answer.

The contract was made by the directors themselves. Hale knew he was contracting with the directors.— Wright did not interfere at all in the business, except to pass between Hale and the directors. So far then as Wright can be considered as an agent in relation to the contract, he was the agent of Hale to carry his proposals to the directors and receive and bring back their answer. Such being the nature of the case, it is perfectly clear that the declarations of Wright cannot be considered as part of the *res gestæ*, and of course were not competent testimony, and the direction which was given to the jury was correct.

It is objected on behalf of the defendant, that the rules of the bank were improperly admitted as evidence in the case, because it does not appear that Hale had any notice of the existence of those rules. This objection is easily answered. The plaintiffs put the rules into the case as evidence merely to meet Hale's testimony ; and the evidence could have had no influence in the case except to render his story as to Wright's declarations improbable. But we are now of opinion, that the jury were properly directed, that Wright's declarations were not evidence, and must have no weight in the decision of the cause. And it is very clear, that it is no ground for granting a new trial, that improper evidence was admitted on the side of the plaintiffs merely to meet evidence which ought not to have been admitted on the other side.

We are, therefore, of opinion, that there must be

*Judgment on the verdict.*

This action was commenced by a writ returnable to this court at November term, 1824. The defendant filed his plea at November term, 1825. At May term, 1828, the plaintiff demurred to the plea, and there was a joinder in demurrer. At November term, 1829, the court

decided that the plea was in law sufficient, and thereupon the plaintiff moved for leave to withdraw the demurrer and take issue upon the matter of the plea, which was granted. The cause was tried at May term, 1830, and a verdict returned in favor of the plaintiff, and now at this term, judgment having been rendered upon the verdict.

*Parker,* for the defendant, moved the court to allow the defendant to tax the costs of the demurrer.

*Bell,* for the plaintiff.

*By the court.* We are of opinion that the plaintiff is entitled to tax the costs of the suit from the commencement up to May term, 1828, inclusive, and all the costs which have arisen since November term, 1829 : and that the defendant be allowed the costs of November term, 1828, and of May and November terms, 1829.