25  425
67  588
f68  87
25  425
71  277

## FURBUSH *v.* GOODWIN.

It is a well settled principle of law, that a receipt may be explained by parol evidence, and its true meaning and purpose shown, although the same may not be in accordance with the obvious import of its provisions, and in effect, in that way, the terms of the written instrument may be varied, explained, limited and controlled by parol evidence.

The statement of a party to a receipt, in a deposition, of what was the "true intent and meaning of the receipt," as understood by him "at the time" of executing it, is, in explanation of it, competent evidence as tending to show the real intention and purpose of the parties in the transaction.

The rule of law excluding parol evidence, offered for the purpose of adding to, explaining, varying, controlling or limiting the terms of a written contract, applies only in a case where the contract to be explained is between the parties to the suit, and not where it is between other parties.

And it is equally inapplicable in a case where one only of the parties to the contract is a party to the action.

So where a contract has been reduced to writing, between persons not parties to the litigation, or one of whom only is a party to the action in which the written contract is given in evidence, the same may be explained by parol evidence; and it may be shown that more and other contracts were entered into between the same parties in connexion with, or in addition to, the written contract.

It is a well settled rule of law, that in order to render parol evidence admissible, for the purpose of proving the contents of a written contract, or other writing,

27

the absence or non-production of the contract or writing must be legally accounted for.

A verdict will not be set aside for the reason that incompetent testimony has been admitted on one side, to meet or rebut proof of a similar character, upon the same point, introduced on the other side.

The owner of land, at the time of the trespass committed upon it, is entitled to the damages that may be recovered in an action of trespass, commenced by him for the purpose, and not a subsequent grantee of the land, who may own it at the date of the litigation.

A quit-claim deed, by a mortgagee, of all his right and title in the land mortgaged, of which he has never been in possession, will pass no interest in the debt secured by the mortgage, and, consequently, none in the land mortgaged.

In this State, nothing more is necessary to discharge the interest of a mortgagee, and revest the estate fully in the mortgager, than the payment of the debt, or the performance of the duty, the payment or performance of which the mortgage was intended to secure.

Where several persons became the assignees of a mortgage, and each of them severally paid his money for himself, so far as his portion was concerned, and the assignment was made to them, specifying the share. or interest of each therein; it was *held* that a payment by the mortgager to one of the assignees, of the amount of his share as specified therein, would discharge and extinguish all his right and interest in the mortgage, and that his subsequent assignment alone would pass nothing.

The interest of a mortgagee, for the purposes of a sale, is merely a chattel interest, and will pass only by the sale and transfer of the debt, so long as the mortgagee asserts no claim to the land mortgaged, by an entry thereon, or by any other method of enforcing the mortgage.

A deed will take effect according to the legal interpretation and meaning of the terms of it, and not according to the erroneous impressions of the parties as to its operation.

Accordingly, where a quitclaim deed, purporting to convey his interest in the land, was executed by the mortgagee, and the consideration expressed in the deed was paid for the mortgage interest, and the parties to the deed, at the time, believed that the interest of the mortgagee in the mortgage and mortgage debt, would pass by the deed; it was *held* that the deed was, nevertheless, insufficient to pass any interest in the debt or in the land mortgaged.

TRESPASS for breaking and entering the plaintiff's close, situate in Somersworth, in this county, and digging up and carrying away the soil, &c.

Plea, the general issue, with a brief statement of the following grounds of defence:

1. That said close was the soil and freehold of the defendant, he being seized and possessed of six-tenths thereof, in common, in fee and mortgage.

2. That said close was the soil and freehold of the defendant, he being seized and possessed of four-tenths thereof, in common, in fee and mortgage.

3. That said close was the soil and freehold of the defendant, he being seized and possessed of one-tenth thereof, in common, in fee and mortgage.

4. That said close was the soil and freehold of Ebenezer A. Tibbetts and Lebbeus Brooks, they being seized and possessed of one-tenth thereof, in common, in fee and mortgage, and that they licensed the defendant to enter, and do the acts complained of.

Upon the trial, it appeared in evidence that on the 30th day of May, 1845, James W. Lougee conveyed the *locus in quo*, with other adjoining lands, to the plaintiff, and at the same time took back a mortgage, to secure the payment of a note for $300, then given by the plaintiff to said Lougee, as a part of the consideration for said conveyance, payable to said Lougee in two years, with annual interest. Prior to the 28th of July, 1847, the plaintiff conveyed all the land so conveyed to him, except the *locus in quo*, in small parcels, at different times, to different persons, by deeds of warranty, the *locus in quo* being designated and known as lot No. 6 in the Lougee land; and the other parcels so conveyed by the plaintiff being in like manner designated and known by their appropriate numbers; and among the conveyances so made by the plaintiff was one to Franklin W. Lougee, conveying to him lots Nos. 7, 8, 9 and 10, one to Brackett Merrill, conveying to him lot No. 14, and one to Tebbets & Brooks, conveying to them lot No. 11. On said 28th day of July, 1847, there remained due and unpaid upon said mortgage-note, the sum of $273, and it was then agreed among the several persons to whom the plaintiff had made said conveyances, that they would contribute each a

sum agreed upon, towards the payment of said note, and amounting in the whole to said sum then due thereon, and pay over the same to said James W. Lougee, for the purpose of obtaining a release of their respective lots from said mortgage, and an assignment thereof as to lot No. 6, to them, in the proportions so paid by them, respectively; and, accordingly, on said 28th day of July, the said sum of $273 was paid by them to James W. Lougee, the said Franklin W. Lougee paying four-tenths thereof, said Brackett Merrill one-tenth thereof, said Tebbetts & Brooks one-tenth thereof, and the other persons to whom such conveyances had been made, the residue of said sum. At the same time, James W. Lougee executed to all the persons so contributing, a release of the mortgage as to their respective lots, and also an assignment of the mortgage and mortgage debt as to lot No. 6, it being specified and set forth in the assignment, that the respective shares and interests of said assignees in the assignment are as follows:—" To Franklin W. Lougee four-tenths thereof, to Brackett Merrill one-tenth thereof, to Tebbets & Brooks one-tenth thereof," and to each of the other four assignees therein named, one-tenth thereof.

The defendant offered in evidence a deed of assignment from Franklin W. Lougee to him, bearing date the 13th day of April, 1849, transferring and making over all his, said Franklin's, interest and claim in and to the mortgage and mortgage debt, and in and to lot No. 6, under and by virtue of the mortgage. The plaintiff then introduced a receipt, signed by Franklin W. Lougee, of which the following is a copy : " 28th Dec. 1847. Received of David Furbush ten dollars, in full for the amount of money paid by me to James W. Lougee to procure his discharge of a mortgage, which he held against said Furbush on certain lots of land, sold to me by said Furbush, by his warranty deed, situated on the westerly side of a new street, which leads from Market street, over the Lougee lot, so called, to Prospect street,

in Great Falls village, in Somersworth." Signed, " Franklin W. Lougee." It was proved, or admitted, that said lots, Nos. 7, 8, 9 and 10 were situated, as described in said receipt.

The defendant then introduced the deposition of Franklin W. Lougee, who testified that the plaintiff never paid the amount of his interest in the note and mortgage, given by the plaintiff to James W. Lougee, at any time after they were assigned by said James W. Lougee ; that the deponent gave a receipt to the plaintiff, dated December 28, 1847, for ten dollars, the actual consideration for which was the giving up by the plaintiff to him of a note of hand, which the plaintiff held against him, for about $10, payable in window blinds, which note had at one time been put into the hands of Samuel Stillings, who endeavored to collect it of him, but the payment of which the deponent resisted, on the ground that he considered himself a loser by the plaintiff, even after the assignment of the mortgage; and that after Stillings had called on him for payment of the note, the deponent saw the plaintiff, and agreed to give him a receipt that would discharge the plaintiff from his covenants of warranty in the deed of the lots from him to the deponent, if the plaintiff would get back the note from Stillings, and give it up to the deponent. In said deposition is contained the following statement, which was objected to by the plaintiff, and ruled out by the court:

" The true intent and meaning of the receipt was understood by me at the time as simply and solely discharging him from his covenants of warranty in his deed or deeds to me, and not as relating in any manner to the rights I had acquired under the assignment of mortgage from James W. Lougee to me and others. Nor did I suppose that I could in any manner relinquish my title or lien to the street or lot before spoken of by me, save by a regular form of deed under seal, and subscribed with my own hand, in the presence of witnesses, or by making an assignment on the back of

mortgage, neither of which would I have done, except for a much larger sum."

The plaintiff then introduced said Samuel Stillings as a witness, who testified that he never had·in his possession a note against Franklin W. Lougee for about $10, payable in window blinds; but that in 1847 he took of the plaintiff, as collateral security for a claim which he had against the plaintiff, a note for about $40, signed by said Franklin, payable in window blinds; that in the summer of that year the witness called on said Franklin for the blinds on the note; that he declined to deliver them, upon the the ground that he had paid out, or should have to pay out, more than the amount of the note, upon the mortgage outstanding on the lots, which the plaintiff had conveyed to him, and that the note ought to be turned upon that account; that afterwards, in the course of the fall of that year, the plaintiff, said Franklin, and the witness, agreed that the witness should return the note to the plaintiff; that the plaintiff should give him other security in place thereof; that the plaintiff should give up said Franklin the note, and also a contract, in writing, which the plaintiff held against him for painting and blinding a house; and that said Franklin should discharge the plaintiff from all claim on account of the money paid by said Franklin towards the James W. Lougee mortgage, and which said Franklin then stated to have been something more than $100, and that this should square the account between them, as to the money which said Franklin had to pay out on account of said mortgage; that a few days after, the witness, in pursuance of the agreement, gave back the note to the plaintiff, and received from him other security.

The plaintiff also introduced as a witness Royal Eastman, who testified that he was present when the receipt, signed by said Franklin to the plaintiff, was given; that the plaintiff then gave up to said Franklin a note which he held against him for about $40, payable in window blinds, and

also a written contract for painting and blinding a house, and that the receipt was given by said Franklin to the plaintiff, in consideration of the giving up said note and contract; that the plaintiff, at first, objected to the sum of $10, specified in said receipt, and said he thought it should set out the full consideration paid by him, but accepted the receipt as it was written, upon its being stated that it made no difference whether that sum or a larger were inserted in it.

The defendant objected to the testimony of said Stillings and Eastman, on the ground that it varied or controlled said receipts, and also on the ground that it was introduced to prove the contents of said note and contract, when they were not produced, nor their absence accounted for; but the court overruled the objection and admitted the evidence.

Before said Eastman was introduced as a witness, Charles E. Bartlett, a witness on the part of the defendant, on his direct examination, testified, that being one of the assignees of the mortgage, the said $300 note was lodged in his hands at the time of the assignment, to hold for the benefit of the assignees; that in 1850 the witness sold his interest therein to said Eastman, and passed the note into his hands; that a few days prior to selling out to Eastman, he, said Eastman, showed to the witness two receipts, giving him the rights of some of the assignees; and, on cross-examination, said Bartlett further testified that said receipts were signed, one by said Franklin, and one by Brackett Merrill, and running to the plaintiff, and that Eastman then notified the witness that the plaintiff had assigned over to him his rights, and passed those receipts into his hands; that the witness then told Eastman that the defendant claimed six-tenths of the mortgage, to which Eastman replied that he would take the risk of the defendant's claim. The defendant objected to the testimony of said Eastman, when offered as a witness by the plaintiff, on the ground that the statement of Eastman, testified to by said Bartlett, on plaintiff's cross-examination, showed that said Eastman was inadmissible, on ac-

count of his interest. The plaintiff then introduced a deed from the plaintiff to said Eastman, dated April 26, 1850, releasing all right to lot No. 6, subject to said mortgage, and also a deed from said Eastman to E. F. Scammon, dated July 5, 1851, conveying all the right acquired by the aforesaid deed from the plaintiff to him. The defendant still objected to the admissibility of said Eastman, but the court admitted him to testify.

The defendant also introduced a deed from Bracket Merrill to the defendant, dated 9th January, 1849, releasing and quitclaiming all right and title to said lot No. 6.

The plaintiff then introduced a receipt, signed by said Merrill, dated 2d of September, 1847, of which the following is a copy :—

"2d Sept. 1847. Received of David Furbush twenty-eight dollars, it being for so much money paid by me to James W. Lougee, to clear his (Lougee's) mortgage on a lot of land warranted to me by said Furbush.

(Signed) BRACKET MERRILL."

And he produced evidence tending to show that about the time of the date of the receipt, the plaintiff paid to said Merrill the sum specified therein, and the receipt was given on account thereof.

The defendant also introduced a deed from said Ebenezer A. Tebbets and Lebbeus Brooks, to the defendant, dated on said 9th of January, 1849, releasing and quitclaiming one tenth part of said lot No. 6, for the consideration therein expressed, of $15.

There was no evidence in the case tending to show that said James W. Lougee, Franklin W. Lougee, Bracket Merrill, Tebbets and Brooks, or any other one of the persons to whom said James W. Lougee assigned the mortgage from the plaintiff to him, ever entered upon the mortgaged premises for the purpose of setting up any claim thereto under

the mortgage, or instituted any other proceedings upon the mortgage, or in relation thereto, for the purpose of enforcing the same.

The defendant introduced said Ebenezer A. Tebbets as a witness, who testified that he and said Brooks sold out their interest in the Lougee mortgage to the defendant, in January, 1849; that the defendant paid them $15 therefor; that they then executed said deed from them to the defendant, and that they had no other interest in the mortgaged premises than such as they acquired by the assignment from James W. Lougee. On cross-examination, the witness further testified that no other conveyance was made at the time of the sale from them to the defendant than said deed; that this was all the defendant asked for at the time; that the bargain between them and the defendant was, that they should give him a quitclaim deed of all their interest in the land; that nothing was said about any interest or claim in the note secured by the mortgage, or about any other claim or interest than such as they had in the land mortgaged; that they never made any other agreement with the defendant than to give him a quitclaim deed of their interest in the lot. The direct examination of the witness then being resumed, the following question was proposed to the witness by the defendant's attorney: " State whether or not the purpose of your negotiation with the defendant was to assign all your interest in the note, and whether you did or not assign and transfer to him all your interest in the note, at the time of executing your deed to him ?"—to which the plaintiff objected, and the court ruled that the question was inadmissible.

It was proved by the defendant, that, at the time of the assignment of the mortgage by James W. Lougee, the mortgage and note secured thereby were deposited in the hands of Charles E. Bartlett, one of the assignees, with the understanding that they were to be held by him for the benefit of all the assignees; and the evidence tended to prove

that a short time prior to the conveyances from Franklin W. Lougee, Bracket Merrill, and Tebbets and Brooks, to the defendant, he, the defendant, called on said Bartlett, examined the note and mortgage, and understood that they were in the hands of said Bartlett, under the agreement and for the purpose aforesaid.

Upon that part of the defence which rests upon the deed of assignment from Franklin W. Lougee to the defendant, the court instructed the jury, that if prior to the time of that assignment, the plaintiff had paid to said Franklin W. Lougee the amount which he had contributed towards the mortgage debt, and interest thereon, or had paid to him any other sum which said Franklin accepted and received in full satisfaction and payment thereof, or had released and given up to said Franklin any claims which the plaintiff held against him, under an agreement between them that the same should be in full payment and satisfaction of the money so contributed, and the claims so given up were received and accepted by said Franklin in satisfaction and discharge of the claim which he had against the plaintiff for the money so contributed, such a payment or giving up of claims by the plaintiff would operate to extinguish all the right and interest which said Franklin had in the mortgage and mortgage debt, and that, if the jury should find that such a payment or giving up of claims by the plaintiff had been made prior to the assignment of the 13th of April, 1849, from said Franklin to the defendant, then nothing passed by that assignment to the defendant, and this branch of the defence failed.

Upon those parts of the defence which rest upon the deeds from Bracket Merrill and Tebbets & Brooks to the defendant, the court instructed the jury, that until said James W. Lougee, or some one of those persons to whom he assigned the mortgage from the plaintiff to him, set up a claim to the mortgaged premises, under the mortgage, by making an entry upon the land, or by instituting some other

proceedings for the purpose of enforcing the mortgage, neither said Merrill nor said Tebbets & Brooks had any such interest in the land mortgaged, as would pass by their deeds to the defendant, without a transfer of the mortgage debt, and that, as there was no evidence in the case of any such entry, or other proceedings to enforce the mortgage, prior to the 9th of January, 1849, nothing passed to the defendant by their said deeds.

The defendant's counsel requested the court to instruct the jury, that if they should find that said Tebbets & Brooks and the defendant, at the time of making their bargain, believed that the right and interest of said Tebbets & Brooks in the mortgage and mortgage debt would pass by the quitclaim deed of said Tebbets & Brooks releasing their interest in the lot, and that the consideration expressed in said deed was then paid for that interest in the mortgage and mortgage debt, and the deed was delivered for the purpose of passing the same, then the right and interest of said Tebbets & Brooks passed by said deed from them to the defendant; but the court declined so to instruct the jury, but did instruct them that if, upon the evidence in the case, showing what transpired between said Tebbets & Brooks and the defendant, at and prior to the bargain between them, and in relation thereto, the jury should find that it was the intention of said Tebbets & Brooks to sell, and of the defendant to buy, their interest in the mortgage and mortgage debt, and that this was what was bargained for between the parties, and for which the consideration was paid by the defendant to said Tebbets & Brooks, then the interest of said Tebbets & Brooks, in the mortgage and mortgage debt, thereby passed to the defendant, although there was no written or formal assignment thereof, and the entry upon the *locus in quo*, and the acts complained of would be justified. But if they should find, from what had transpired between said Tebbets & Brooks and the defendant, at and prior to the bargain between them, and in re-

lation thereto, that it was the intention of said Tebbets & Brooks to sell, and of the defendant to buy, only such interest as it was supposed they had in the land, and the consideration was paid and the deed given for that, then the defendant, by this transaction, acquired no such interest in, or right to the land, as would justify his entry upon it.

To all which rulings and instructions of the court, the defendant excepted.

The jury returned a verdict for the plaintiff, and the defendant moved that the same be set aside, and a new trial granted, on the ground of the aforesaid alleged erroneous rulings and instructions of the court.

*R. Eastman* and *Christie*, for the plaintiff.

I. The exclusion of the part of F. W. Lougee's deposition was correct. The defendant claims under said F. W. Lougee, and he could not put in the *secret understanding* and *suppositions* of his grantor, to control and vary the receipt. The *facts* in relation to the matter are all that is properly admissible, and these were not rejected by the court.

II. The testimony of Stillings and Eastman was introduced to contradict Franklin W. Lougee, and it did not vary, control or enlarge the effects of said receipt, but on the contrary it shows that the receipt is just what it purports to be—a receipt in full for the amount paid by F. W. Lougee to James W. Lougee; as set forth in said receipt. There can be no mistake as to what the sum paid to James W. Lougee was; the case shows that it was four tenths of $273—due July 28th, 1847. And for this sum, then paid by F. W. Lougee, James W. Lougee assigns to said F. W. Lougee four tenths of the mortgage on lot No. 6, and the debt ($273,) thereby secured, and the testimony of Stillings and Eastman goes no further.

The testimony of Stillings and Eastman, in relation to the note payable in blinds, and the contract for painting

and blinding a house, was also to contradict F. W. Lougee. The contents of said note and contract were not inquired into. They were only described by the witness as " a note for about $40, payable in window blinds," and " a contract in writing for painting and blinding a house."

III. The objection to the admissibility of said Eastman as a witness, on the ground of interest, is unfounded. The alleged trespasses were from August 1st, 1849, to April 26th, 1850. Subsequent to the trespasses, and on said 26th of April, 1850, it appears that said Furbush conveyed to said Eastman, by quitclaim deed, his right to lot No. 6, subject to said mortgage, and as a matter of course, at the same time delivered to him the receipts of F. W. Lougee and Bracket Merrill, as evidence that said Lougee and Merrill had been paid their full claims under the mortgage. On the 5th day of July, 1851, said Eastman conveyed to E. F. Scammon all his interest in said lot No. 6.

Said Eastman had or claimed no other interest in the premises than what passed by the aforesaid deeds. Furbush never assigned, sold, or parted with his claim against Goodwin for the trespasses committed by him on the lot, before he sold it, and the suit was brought by Marston & Eastman, for said Furbush, the same as they brought any other suit, and the docket so shows.

IV. The question proposed by the defendant's attorney to Ebenezer A. Tebbets, upon direct examination, was clearly inadmissible. Tebbets had testified that he and Brooks never made any other agreement with Goodwin than to give him a quitclaim deed of their interest in the lot. This deed was given, and was introduced by the defendant. The intention of the parties is to be gathered from what actually transpired between Tebbets & Brooks and the defendant, at and prior to the time of the bargain between them, and the secret purposes of the witness, not acted upon or expressed at the time, should not be inquired into by the party calling him.

V. The instructions of the court upon that part of the defence which rests upon F. W. Lougee's assignment to Goodwin, were all correct. The mortgage note was long overdue, and Goodwin took only F. W. Lougee's interest in said note, subject to the defence of payment which was set up and proved. The interest of F. W. Lougee in the mortgage debt, by J. W. Lougee's assignment, was distinct and clear—as much so as if there had been several notes, and said Franklin's note had been four tenths of the $273, to wit: $109,20. The assignees might be tenants in common in the land, and the whole land might be holden till each and all should be paid; but the mortgager could pay either one of them at any time, and his claim on the land, under the mortgage, would be discharged. All the parties to the mortgage must have so understood it, and acted upon that principle. Neither of the other assignees ever called upon F. W. Lougee to pay over to them any part which he received of Furbush, or make any such claim; and there appears no reason why Lougee could not receive his money of Furbush, and discharge his claim, by receipt or otherwise, as well as to receive it of a third person, and assign his interest in the mortgage and debt to such third person. F. W. Lougee acknowledged the receipt, in full, of Furbush, of all his demands, and he had nothing left which he could convey to Goodwin. The cases cited by the defendant's counsel do not sustain his position on this exception.

VI. Upon those parts of the defence which rest on the deeds from Bracket Merrill and Tebbets & Brooks, the instruction of the court was right. Merrill had been paid in full by Furbush, before the conveyance to Goodwin. And besides, he gave only a quitclaim deed to Goodwin of his interest in the land. Tebbets & Brooks did not sell or assign their interest in the mortgage debt. The defendant's counsel says in his brief, that "$15 was all that was due Tebbets & Brooks, and the payment of that sum to them by the defendant, gave him in law all their right in the

mortgage." This is a misstatement of the evidence. On the 9th day of January, 1849, (the date of the quitclaim deed,) there was due Tebbets & Brooks, on the mortgage debt, the sum of $29,53, and it so appears from the case, by adding the interest to the sum they paid J. W. Lougee. The defendant paid Tebbets & Brooks $15, not as a payment of their claim or for said claim, but for a quitclaim deed of the land. This was all he bargained for, and all he received, or was entitled to receive, according to the testimony of his own witnesses. The question was submitted to the jury to find, from all that transpired between Tebbets & Brooks and the defendant, whether they intended an assignment of the mortgage debt, and the jury must have found that such assignment was not intended by the parties at the time. Neither James W. Lougee, or any of the persons to whom he assigned, ever entered upon the mortgaged premises, or in any way took possession of the same, and a quitclaim from Tebbets & Brooks of the lot, without a transfer of the debt to the defendant, gave him no right to enter upon the land, against the plaintiff. The charge is not, as is stated in the defendant's brief, " that the defendant, being in possession, committed the wrong by removing the earth," &c., but that he broke and entered, and dug up and carried away the soil, &c.; and the case so shows. *Ellison* v. *Daniels*, 11 N. H. Rep. 274, and cases cited.

VII. The court declined instructing the jury in the exact language the defendant's counsel requested, but did instruct the jury substantially as the counsel requested—using more appropriate expressions, and clearly and fairly stating the whole law by which they should be governed in deciding the point in question.

*J. S. Wells*, with whom was *Jordan*, for the defendant.

The exclusion of a part of the deposition of Franklin W. Lougee was incorrect. The defendant had a right to resist

the receipt offered the plaintiff. If it was not in reality what it purported, the defendant (he being no party thereto,) could show that such was the real state of the case, and as the excluded part of the deposition tended to that, the ruling was wrong.

II. The position of the plaintiff is, that the receipt of F. W. Lougee in reality discharged all his rights in the mortgaged property. The plaintiff being a party to the receipt, cannot by parol, enlarge the effect of the same, and we insist that the evidence of Stillings and Eastman had that effect. The receipt in terms was confined to the money paid James W. Lougee to procure his discharge of the mortgage. And the evidence of Stillings extends the contract to what F. W. Lougee had paid out, or should have to pay out, upon the mortgage outstanding upon the lots.

III. If it be admissible to introduce the matter of the written contract for painting and blinding a house, the paper should have been produced, that the jury might determine the value of that portion of the consideration.

IV. The alleged trespass was from August 1, 1849, to April 26, 1850. At the last date, the plaintiff, by deed, conveyed to Eastman (the witness,) all right to the land in question. By the evidence of Charles E. Bartlett, it was proved that in 1850 he sold to Eastman his interest in the mortgage, and delivered to him the receipt of Lougee and B. Merrill; that he informed Eastman of the defendant's claim in the mortgage, and that Eastman replied that he would take the risk of the defendant's claim.

V. Ebenezer A. Tebbets testified that he and Brooks sold out to the defendant their interest in the Lougee mortgage. The deed given applies in terms only to the land. What the defendant proposed was to show that, for the consideration expressed in the deed, they sold to the defendant all their right in the mortgage note. This does not interfere with, or alter the terms of the deed. If A., for $1000, agreed to sell B. a farm and the stock thereon, and gave

only a deed of the land, it would not be denied that the vendee might show by parol that the title to the stock passed to him.

The question to Tebbets, which the court excluded, was therefore pertinent upon the question whether the right of Tebbets & Brooks in the mortgage note passed to the defendant. This exclusion deprived the defendant of all evidence as to the intention of the parties in that transaction, and confined the jury to the deed. and the plaintiff's examination of the witness in their interest. Although nothing was said about the note or mortgage, the defendant had the right to inquire of that witness as to the intention of the parties in the transaction. True, the court submitted to the jury the question of intention, but excluded the evidence to show it.

VI. At the time of the transfer from F. W. Lougee to the defendant, the mortgage note was in the hands of Bartlett, one of the assignees, and was the same as though in the possession of all.

VII. The note and mortgage was an entire thing; the mortgagee had a right to enter upon and control the estate until the whole debt was paid; stating in the assignment the interest of each assignee in the debt, did not sever their interest as tenants in common in the mortgage and estate. A payment to one was a payment for the benefit of all, and each had a right to claim his proportion of any money paid to others. *Gibson* v. *Crehore*, 5 Pick. Rep. 152; 9 Pick. 325; *Bank* v. *Brown*, 12 N. H. Rep. 321; 11 East 39; *Myers* v. *United States*, 1 McLean's Rep. 493.

VIII. The $15 was all that was due Tebbets & Brooks, and the payment of that sum to them by the defendant gave him in law all their right in the mortgage. *Marsh & ux.* v. *Rice*, 1 N. H. Rep. 167.

IX. The assignees of the mortgage in this case were tenants in common. 22 Pick. 557.

X. The note having been transferred to the assignees,

28

and lodged in the hands of one of them, a subsequent con-
veyance by quitclaim, conveyed to the defendant the right
of Tebbets & Brooks.  In 13 N. H. Rep. 253, *Parker*, C.
J., says the estate will pass by a parol transfer of the debt.
The transfer need not give the assignee a right of action in
his own name upon the security.

Woods, J.  By means of the conveyance from James
W. Lougee, whose title is admitted, to the plaintiff, and the
reconveyance of the premises in question, together with
other adjoining lots, to said Lougee in mortgage, the plain-
tiff became seized of an equity of redemption in the same,
which would enable him to maintain a writ of entry, or
an action of trespass, against any person entering into the
premises, excepting the said Lougee, the mortgagee, or
some one claiming his rights, and entitled thereto by an as-
signment of the mortgage interest.

These conveyances were executed on the 30th of May,
1845.

At the trial, the defendant set up a claim of right in the
*locus in quo*, alleged to have been derived from certain im-
mediate assignees of the mortgage interest of James W.
Lougee.   The case finds that on the 28th day of July, 1847,
for the consideration of $273, James W. Lougee, the mort-
gagee, duly assigned all his interest in the mortgage and
mortgage debt, as to lot 6, the *locus in quo*, conveying four
tenths thereof to Franklin W. Lougee, one tenth to Bracket
Merrill, and one tenth to Tebbets & Brooks, and the other
four tenths to other persons, and the note, to secure which
the mortgage was made, was placed in the hands of one
Bartlett, for the benefit of all the assignees.  By that as-
signment, the assignees acquired the mortgage title to the
lot.   On the 13th day of April, 1849, Franklin W. Lougee,
one of said assignees, executed to the defendant a deed of
assignment, transferring and making over all his interest
and claim in the mortgage and mortgage debt.  The de-

fendant gave that deed in evidence, and the plaintiff, to rebut and control the effect of it, by showing the mortgage discharged to the extent of the interest of F. W. Lougee, gave in evidence a receipt of the following tenor, viz:

"28th Dec. 1847. Received of David Furbush ten dollars, in full for the amount of money paid by me to James W. Lougee, to procure his discharge of a mortgage which he held against said Furbush on certain lots of land sold to me by said Furbush, by his warranty deed, situated on the westerly side of New street, &c. &c.

(Signed) FRANKLIN W. LOUGEE."

Prior to the 28th day of July, 1847, Furbush had conveyed by deed with warranty to said Franklin W. Lougee four of the ten lots conveyed by James W. Lougee to him on the 30th of May, 1845, which lots were situated as described in said receipt. The deposition of Franklin W. Lougee was given in evidence by the defendant, in which he testified, among other facts, that the plaintiff never paid the amount of his interest in the note and mortgage given to James W. Lougee, and assigned as aforesaid. That the deponent gave the receipt described, for the amount of $10, and that the consideration therefor was the giving up by the plaintiff to the witness of a note which the plaintiff held against him for about $10, payable in window blinds, which note had at one time been put into the hands of Samuel Stillings, and that after Stillings had called on the deponent for the payment of the note, the deponent saw the plaintiff, and agreed to give him a receipt that would discharge the plaintiff from his covenants of warranty in the deed of the lots from him to the deponent, if the plaintiff would get back the note from Stillings, and give it up to the deponent.

The deposition thus far was read without objection. The deposition contained also the following additional statement

of facts, viz: " The true intent and meaning of the receipt was understood by me, at the time, as simply and solely discharging him from his covenants of warranty in his deed or deeds to me, and not as relating in any manner to the rights I had acquired under the assignment of mortgage from James W. Lougee to me and others. Nor did I suppose that I could, in any manner, relinquish my title or lien to the street or lot before spoken of by me, save by a regular form of deed, under seal, and subscribed by my own hand, in the presence of witnesses, or by making an assignment on the back of the mortgage; neither of which would I have done, except for a much larger sum." This testimony was material, if admissible, as going to show that the receipt was not given or designed to discharge the mortgage, but the covenants in the deed of warranty. The plaintiff objected to the statements last aforesaid, contained in said deposition, as being incompetent evidence, and the same were ruled out by the court.

The first question arising upon the case is as to the propriety of the rejection of that evidence. And we are of opinion that the evidence was improperly excluded. The object of the evidence was to explain the design and purpose of the receipt, and to show for what purpose and with what view the receipt was made and executed. Regarding this as a mere receipt, and the evidence of F. W. Lougee as being offered for the purpose of showing upon what account the sum was given, and the object it was designed to effect, and the purpose to which it was, by the understanding of the parties, to be applied, the evidence, if it had that tendency, was admissible, and should have been received. It is not a rule of law of recent date, or a doctrine of new impression, that a receipt may be explained by parol evidence. If its import be not what the parties designed it should be, or if, in its terms, it be not what it was intended to be, the true intent and meaning of it may be shown by parol. In fact, no principle, perhaps, is better settled

than that receipts may be explained by parol, and their true meaning and purpose shown, although the same may not be in accordance with their provisions; and in effect, in that way, the terms of the written instrument may be varied, explained, limited and controlled by parol evidence.

The precise ground upon which the plaintiff claims to sustain the ruling of the court below, is, that that portion of the deposition which was ruled out, contained, as he alleges, a statement only of the secret understanding and suppositions of the defendant's grantor, and that they are wholly inadmissible to explain or vary the receipt.

But we do not understand the statements of the deponent, that were ruled out, to be precisely of the character suggested. They are, in fact, the statements of the deponent, who is a party to the receipt, as to his understanding of the intent and meaning of the·receipt at the time of making it, and as to the purpose which the payment and receipt were intended to accomplish in reference to certain deeds of conveyance then existing between the parties. The plain effect of the statements is, to furnish evidence of what one of the parties understood was the meaning and intention of both the parties, in reference to the transaction which resulted in the giving of the receipt in question. It was, then, nothing more or less than evidence of the intentions of the parties, showing the same to be different from that expressed in the instrument. And we think the evidence entirely admissible for that purpose. The very object of every explanation of a receipt is to show that the purpose of it was not the same as that plainly expressed upon the face of it. If the true and proper meaning and intent of the parties were plainly expressed in the receipt, no evidence by way of explanation would be wanted. The object of proofs let in by way of explanation, is to show that instruments to be explained do not express the true intent of the parties, and to show that the same were not designed to have, and should not be allowed to have, the

effect which, by their terms, they would properly have. The statement by the party to the agreement, as to his understanding of the intent and purpose of the receipt, was merely a statement of what the contract was, made at the time, as to the effect to be given to the receipt, and that the same was different from that expressed in the receipt itself.

But if it might be supposed that the receipt in question was in truth a contract between the parties to it, and as such, as between them, could not admit of the explanation offered in this case, still, as it is not a contract between the parties to this suit, upon that ground it was admissible. The rule excluding explanatory parol evidence applies only in a case where the contract to be explained is between the parties to the suit, and not where it is between other persons.

The ruling of the court in the particular under consideration, was erroneous. The evidence should have been admitted. *Woodman* v. *Eastman,* 10 N. H. Rep. 357; 1 Greenl. Ev. 317 § 279; *Krider* v. *Lafferty,* 1 Wharton Rep. 303, 314.

Another question arises upon the exception taken to the admissibility of the testimony of Samuel Stillings and Royal Eastman. Stillings was a witness on the part of the plaintiff, and testified that he never had in his possession a note against Franklin W. Lougee for about $10, payable in window blinds, but that in 1847 he took of the plaintiff, as collateral security for a claim which he had against the plaintiff, a note for about $40, signed by said F. W. Lougee, payable in window blinds, and that in the summer of that year the witness called on said Franklin for the blinds upon the note, and he declined to deliver them, &c. The evidence as to the amount of the note, as well as in other respects, tended to contradict the testimony given by said Franklin; said Franklin having testified that the note described, and which both witnesses testify

was given up to the plaintiff upon the occasion of the making of the receipt, was a note for about $10, while Stillings testified that it was a note for about $40, and that he never held a note for about $10 against said Franklin, who was the admitted debtor in the note, whatever might have been the amount thereof. Royal Eastman, a witness for the plaintiff, testified in confirmation of the testimony of Stillings, and in contradiction of that of F. W. Lougee, that he was present when the receipt in question, signed by Franklin W. Lougee, was given to Furbush, the plaintiff, and that the plaintiff then gave up to said Franklin a note which he held against him for about $40, payable in window blinds, and also a written contract for painting and blinding a house, and that the receipt was given in consideration of the giving up of said note and contract, &c.

The objection to the testimony of Stillings and Eastman was, that it went to vary and control said receipt, and also on the ground that it was offered to prove the contents of said note and contract, when the same were not produced, nor their absence accounted for.

The first ground of objection cannot be sustained, for reasons already assigned in relation to the admissibility of the evidence of F. W. Lougee.

It was explanatory of the receipt, and was clearly admissible for that reason and for that purpose, if upon no other ground, and the evidence could not have been properly rejected. But if it were not admissible upon the first ground, we think it was clearly receivable, notwithstanding the second ground of exception.

It is not necessary, in the view we take of the matter, to determine the question, whether the case falls within the operation of the very well settled rule of law, that when the object and purpose of the evidence is to prove the contents of a written contract or other writing, the contract or writing must be produced, or its absence legally accounted for. Evidence of a like character had been previously

given, on the part of the defendant, relative to the note. By the testimony of F. W. Lougee, it had been described as being a note for about $10. And the evidence of Stillings and Eastman described the note as being a note for about the sum of $40. The evidence of each party, then, was of the same character, and the purpose was the same, namely, to furnish proof of the amount of the note by parol evidence. It is objected that the plaintiff, in order to do that, gave in evidence the contents of the note and contract, without the production of either, and without showing any legal reason for the omission. If the plaintiff's evidence be exceptionable for the reason assigned, and it is to be rejected for that cause, it is quite evident that thereby the defendant would be allowed to avail himself of a great advantage, to which he is not well entitled. And that view presents the question, whether he is, in point of law, entitled to that advantage, and that the court are required to yield it to him. It would seem but even-handed justice, that, if one party should give evidence in proof of some point of his case, of a particular character, not strictly competent, in point of law, for the purpose for which it was offered, the opposite party should be allowed the benefit of proofs of a like character, in disproof of the fact in issue. It would seem but just and proper to hold the party first offering the incompetent proof, to be precluded from regarding it as incompetent, when the same character of evidence is offered in the same cause, and to the same point, by the other party.

The whole object of the testimony of Stillings and Eastman, so far as the same relates to the contents of the note and contract, was to contradict F. W. Lougee as to the amount of the note that was in the hands of Stillings, and thereby to affect the weight of his testimony generally.

In the case of *Grafton Bank* v. *Woodward*, 5 N. H. Rep. 301, this precise point arising in the case would seem to be decided. It was there determined that where improper testimony is admitted on one side, it furnishes no ground for

granting a new trial, that, to rebut such testimony, improper evidence was admitted on the other side. The court there say, that " it is very clear that it is no ground for granting a new trial, that improper evidence was admitted on the side of the plaintiff, merely to meet evidence which ought not to have been admitted on the other side." In that case, as in this, the improper evidence, on the part of the defendant, was admitted without objection, while that offered by the plaintiff was excepted to.

In the present case, if the evidence on the part of the plaintiff was improper, or incompetent for the purpose for which it was offered, so was that produced by the defendant equally exceptionable, and for the same cause, and upon the same ground. The case, then, comes fully within the principle decided in the case of *Grafton Bank v. Woodward;* and we see no reason to doubt the correctness of that decision, and are, therefore, of the opinion that the exception taken to the evidence of Stillings and Eastman cannot prevail.

Royal Eastman was objected to as incompetent to give evidence, on account of his interest in the action and the fruits thereof. The action is brought to recover damages for trespasses committed upon lot No. 6, one of the ten lots sold by J. W. Lougee to the plaintiff, between the first day of August, 1849, and the twenty-sixth day of April, 1850. It does not appear that Eastman had any interest in the lot prior to the said twenty-sixth day of April, 1850. Furbush alone, then, is entitled to the damages that may be recovered in the present action. Eastman is not entitled to the whole, or to any part of the same, unless Furbush has transferred his rights therein to him. That fact is not shown by the case. Any conveyances of the land, or mortgage interest to him, after the time of the trespass, would give him no right to damages. We are, therefore, of the opinion that Eastman had no such interest in the event of the action as would disqualify him to give evidence in the cause. The

exception to the verdict, on the ground of his interest, must be overruled.

Brackett Merrill's deed to the defendant, on the 9th of January, 1849, releasing and quitclaiming all his right and title to lot No. 6, passed nothing. This may be stated upon two grounds. In the first place, the deed was of the lot only, and did by no means pass the interest in the debt secured by the mortgage of the lot. *Bell* v. *Morse,* 6 N. H. Rep. 205, and *Ellison* v. *Daniels,* 11 N. H. Rep. 274. But if it were otherwise, and, by force of the terms of the deed, the interest assigned to Merrill by James W. Lougee would have passed, still that interest did not pass, for the reason that so far as the interest of Merrill was concerned, the land had been redeemed from the Lougee mortgage, as shown by the receipt mentioned in the case, of the 2d of September, 1847, from said Merrill to the plaintiff. The conveyance of Brackett Merrill, then, to the defendant, was at a time when he had no interest in the mortgage debt, or in lot No. 6, the *locus in quo.*

The same remarks are applicable as to the effect of the deed of Tebbets & Brooks, of the 9th of January, 1849, to the defendant, so far as concerns its effect to pass any interest in the land. It purported only to be a release and quitclaim of one-tenth of the lot No. 6 to Goodwin. The grounds and reasons upon which conveyances of the character under consideration, have been uniformly held in this State not to transfer the interest in the land, are fully stated and discussed in the cases above referred to, and do not require repetition at this time. The doctrine of the cases is, that a mere quitclaim deed, purporting to be a conveyance of the land mortgaged, will not pass the debt secured by the mortgage, and, consequently, will not pass any interest in the land itself, attempted to be conveyed, when the mortgagee is not in possession. For the purpose of sale, the mortgagee is regarded as holding only a chattel interest, and can only sell the debt, and thereby pass the land as an incident to the

debt. The debt and the land mortgaged cannot be separated, and the title to the debt reside in one party, while the interest in the land mortgaged resides in another. By a sale of the debt only will the interest of the mortgagee in the land pass. The law will not tolerate the separation of the principal from the incident. Thereby great injustice would be done to the rights of the mortgagee. It appears in the present case, that none of the assignees of the mortgage were ever in possession of the land.

At the trial, the defendant introduced Ebenezer A. Tebbets as a witness, who, on cross-examination by the plaintiff, testified to the contract, on the part of Tebbets & Brooks, to execute to the defendant a quitclaim deed of their interest in the land. Upon re-examination by the defendant's counsel, the following question was put to the witness, viz: " State whether or not the purpose of your negotiation with the defendant was to assign all your interest in the note, and whether you did or not assign and transfer to him all your interest in the note, at the time of executing your deed to him ?" The question was objected to, and the court sustained the objection. In this particular, we think the ruling of the court below erroneous.

The deed of conveyance, as we have seen, was inoperative to pass the land or the debt. And it is objected that the deed, in this case, operates to exclude all parol evidence of the real contracts of the parties beyond what is expressed in the deed. This objection is placed upon the ground that the bargain, being reduced to writing in the form of a deed, cannot be explained, varied or controlled, limited or enlarged, beyond the true meaning of the parties, as the same is expressed in the writing itself. That this doctrine is perfectly sound and well established as between the parties to the contract, and in any controversy between them, involving an inquiry as to its true intent and meaning, and that such contract must be judged of by its own terms, viewed

in the light of surrounding circumstances, are legal positions admitting of no doubt.

But where the question arises between others, not the parties to the instrument, and the instrument is offered in evidence, collaterally, the same is open to explanation by parol, and it may be shown that more and other contracts were entered into, in connexion with, or in addition to, the written contract. We would refer, in support of this view, to the authorities already cited in this opinion, upon another point in the case. The application of the doctrine stated, to the present case, is entirely appropriate.

The contract in question was not between the parties to this litigation, but between one of them and a third person. This, however, does not differ from the case of a contract which is between persons, neither of whom is party to the litigation, and which it is proposed to vary, limit or enlarge by parol evidence.

The proposition was to prove, by the testimony of Tebbets, that his design was to assign all his interest in the note to the defendant ; that he did in fact assign and transfer all his interest in the note to him ; in short, that he transferred the note to the defendant, independently of the deed of the land. The inquiry proposed was calculated to elicit an answer to the effect and extent stated, and it must be taken that such answer would have been given. There was no occasion for any writing, to enable Tebbets to transfer his interest in the note, (*Rigney* v. *Lovejoy*, 13 N. H. Rep. 247,) nor was it necessary to deliver the same to the defendant, in order to effect that object. The note being in Bartlett's hands, for the benefit of the assignees, a parol sale, upon a good consideration, would alone, without more, pass the interest in the note to the defendant.

In this view of the case, we feel no hesitancy in holding that the court erred in refusing to allow Tebbets to answer the inquiry proposed by the defendant. Since the inquiry was calculated to call out an answer which might have

shown a valid sale of the debt in a competent and proper way, the defendant was clearly entitled to such answer as the truth might warrant, which alone, it is to be presumed, the witness would have given.

In *Woodman* v. *Eastman*, before referred to, (10 N. H. Rep. 365,) the language of Chief Justice *Parker* is as follows: " Nor is the evidence of Averill exceptionable, because it goes to prove an agreement which is not contained in the written receipt or agreement, signed when he received the note or draft, on the 25th of August. So far as it shows an agreement for delay, it does not contradict any thing in that instrument, but is entirely consistent with it. But if it had contradicted it, the defendant would not be precluded, by any writing between the plaintiff and Averill, from proving all the terms of the agreement. The rule that evidence cannot be admitted to contradict or add to the terms of a written instrument, has no application to third persons who are not parties to the written agreement."

We regard the doctrine, as stated by the chief justice in that case, as fully sustaining the view adopted in the present case.

The same principle is fully recognized in a very well considered case in the supreme court in Pennsylvana. *Krider* v. *Lafferty*, 1 Wheat. Rep. 303. This was a writ of error to reverse a judgment of the court below, recovered by *Lafferty* v. *Krider*, in an action of trespass *quare clausum*. The plaintiff claimed the land under one Lentz, senior, by virtue of a lease. The defendant, Krider, claimed the land under a sheriff's sale, in virtue of proceedings had in the district court for partition, after the death of Lentz, which occurred in 1817. A question arose whether Lentz, junior, was ever in possession of the willow lot, as the *locus in quo* was called, and evidence was introduced upon the point. In that connexion, the defendant's counsel offered in evidence, having proved the hand-writing, a paper signed John Lentz, dated the 14th of September, 1830, which was al-

leged to be an acknowledgment of the receipt of the sum of $10, as a consideration for delivering immediate possession of the land purchased by the latter at the sheriff's sale.

Krider then called Lentz, and on cross-examination by the counsel of Lafferty, he was asked, " What the money, mentioned in the receipt, was paid for ?" and it was admitted, although objected to, and he answered that it was paid for the possession of the land which he occupied, that it was not paid for the possession of the willow lot, and that he never considered that lot in his possession.

In reference to the error assigned upon the exception stated, the court say, " We think there is nothing in the third error assigned. As Lafferty, the plaintiff below, was no party to the receipt, he was not estopped from gainsaying the truth of the matters alleged in it. It was competent for him to show, if he could, that it was all a fiction or a contrivance between Krider and Lentz," " and this he was at liberty to show by the evidence of Lentz himself, as well as that of any other." " And even if it had been concocted for a fraudulent purpose, he would have been bound to disclose it, if it had been material to the issue, as long as it was of such a nature as would not subject him to criminal punishment."

" The authorities, cited by the counsel for the plaintiff in error, showing that written agreements or instruments cannot be altered, changed, or contradicted, have not the least application. The rule laid down by them is only applicable to cases of controversies between the parties to the agreements, their representatives, and those claiming under them, but not strangers, whose rights and interests would truly be in peril, if this rule were to be extended to them in such a manner as to conclude them from giving evidence tending to contradict such agreements."

The court, among other things, instructed the jury, in substance, that if, prior to the assignment of the 13th of April, 1849, from Franklin W. Lougee to the defendant

the plaintiff had paid to said Lougee the amount which he had contributed towards the mortgage debt and interest, or had paid him any other sum, or had given up any claims which he held against the defendant, under an agreement that the same should be in full satisfaction and payment of the money so contributed, such payment or giving up of claims, would operate to extinguish all the right and interest which said Franklin had in the mortgage, and the debt secured thereby, and that, consequently, nothing passed by his assignment to the defendant. We think the ruling was entirely correct. The supposed payment, or satisfaction, was made prior to the assignment. And it is well settled that nothing more is necessary to divest the interest of a mortgagee, and to revest the mortgage interest in the mortgager, than the payment of the money, or the performance of the duty, the payment or performance of which the mortgage is intended to secure. The money, in this case, was advanced by the several assignees, each for himself, so far as his portion was concerned, and each acquired an interest in the mortgage by the assignment, in proportion to the amount advanced by him, by the express terms of the assignment; and, we think, that when the portion advanced by any one was fully paid by the mortgager, and accepted by such one, his interest in the mortgage must be regarded as fully discharged.

The court further instructed the jury that neither Merrill nor Tebbetts & Brooks had any such interest in the lot as would pass, by their deeds, to the defendant, without a transfer of the mortgage debt, until said James W. Lougee, or some one of those to whom he assigned the mortgage, set up a claim to the mortgaged premises, by making an entry upon the land, or other proceedings, for the purpose of enforcing the mortgage. This direction, we think, was unexceptionable. It at least furnished no ground of complaint to the defendant. For the purpose of sale, the interest of the mortgagee and of his assignees was a mere chattel in-

terest, which, it is well settled, would not pass by a quit-claim deed, purporting a conveyance of the land only described in the mortgage. *Bell* v. *Morse* and *Ellison* v. *Daniels*, already referred to. See also *Smith* v. *Moore*, 11 N. H. Rep. 55.

We think, also, that the ruling of the court was correct, refusing to instruct the jury that " if, at the time of the bargain, Tebbets & Brooks and the defendant believed that their interest in the mortgage and mortgage debt would pass by the quitclaim deed of said Tebbets & Brooks, releasing their interest in the lot, and the consideration expressed in the deed was then paid for that interest in the mortgage and mortgage debt, and the deed was delivered for the purpose of passing the same, then the interest of Tebbets & Brooks did pass by the deed from them to the defendant. The belief of the parties, as to the effect of the deed, could neither add to nor diminish its force. Deeds will take effect according to their legal import, if at all, and not according to the erroneous opinion of the parties as to what that effect may be. The deed, whatever might have been its supposed force, purported only to carry an interest in the land, which, as we have seen, is insufficient to pass the debt secured by the mortgage, and, consequently, as has been already shown, was wholly insufficient to pass the land, or any interest therein.

The court further instructed the jury, that if by the evidence of what transpired between Tebbets & Brooks and the defendant, at and prior to the bargain, it appeared that it was the intention of Tebbets & Brooks to sell, and of the defendant to buy their interest in the mortgage and mortgage debt, and that the consideration was paid for that interest, then the interest of Tebbets & Brooks in the mortgage and mortgage debt, passed to the defendant, although there was no written or formal assignment thereof, and the entry upon the *locus in quo*, and the other acts complained of, would be justified. But if it appeared that it was the in-

tention of Tebbets & Brooks to sell, and of the defendant to buy, only such interest as it was supposed they had in the land, and the consideration and deed were given for that, then the defendant acquired no such interest in the land, or right to it, as would justify his entry upon it.

These last instructions were, we think, sufficiently favorable to the defendant.    Indeed, to the first branch of them we suppose the exceptions are not intended to apply.    The exceptions are only intended to apply to the second branch.

This was to the effect that if the consideration was paid only for what interest these assignees had in the land, and it was intended to sell that only, then nothing passed to the defendant.

Tebbets & Brooks had, in fact, no interest in the land that would pass by sale, without the debt, as we have already seen; and it is supposed that by the latter part of the instructions nothing else was assumed to have been intended to be sold or paid for, and there is not shown to have been any other sale and conveyance designed or intended, excepting what was effected in reference to the real estate, by the operation of the deed.    And as, for the purposes of sale, Tebbets & Brooks had nothing in the land excepting in connexion with the debt, and which would pass only with a sale of the debt, nothing could pass, upon the state of facts assumed by the instructions.

On the whole, we see no ground to doubt the correctness of the judge's ruling in this particular.

The fact disclosed by the case, that a short time prior to the conveyances from Franklin W. Lougee, Brackett Merrill, and Tebbets & Brooks to the defendant, the defendant called on Charles E. Bartlett, who had the note and mortgage in his hands, and examined said note and mortgage, can have no influence in the decision of this cause.    Those acts could in no way give form to the other facts and transactions disclosed in the case.

29

The verdict must be set aside for the errors already stated in the rulings of the court below, and a

*New trial granted.*